

# NUMBER 13-19-00431-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KEVIN MARTIN, JAMIE MARTIN,
AND ASHLEY LUSK,                                         Appellants,

v.

ROSETTA RESOURCES OPERATING, LP,                        Appellee.

### On appeal from the 156th District Court
### of Live Oak County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Chief Justice Contreras**

In this appeal, we are once again called on to interpret and apply "opaquely worded" "cryptic language" in an oil and gas lease. *See Burlington Res. Oil & Gas Co. v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 210 n.10 (Tex. 2019); *see also Devon Energy Prod. Co. v. Sheppard*, No. 13-19-00036-CV, 2020 WL 3478680, at *20 (Tex. App.—

Corpus Christi–Edinburg June 25, 2020, no pet. h.) (mem. op.). Appellants Kevin Martin, Jamie Martin, and Ashley Lusk (the Martins) sued appellee Rosetta Resources Operating, LP (Rosetta), and the trial court granted summary judgment in favor of Rosetta. The Martins argue this was error because: (1) the subject leases required Rosetta to protect their undrilled property against drainage; (2) the lease unambiguously required Rosetta to "either spud an offset w[e]ll or release the acreage within 12 months of drainage"; and (3) there is no fact issue as to Rosetta's obligations under the lease. We reverse and remand.

## I. BACKGROUND

The Martins, landowners in Live Oak County, entered into mineral lease agreements (the Martin Leases) with Mesquite Production Inc. (Mesquite) in 2001 and 2006. The leases each contained several addenda including the following Addendum 18:

> Notwithstanding anything contained herein to the contrary, it is further agreed that in the event a well is drilled on or in a unit containing part of this acreage or is drilled on acreage adjoining this Lease, the Lessor [sic], or its agent(s) shall protect the Lessee's [sic] undrilled acreage from drainage and in the opinions of reasonable and prudent operations, drainage is occurring on the un-drilled acreage, even though the draining well is located over three hundred thirty (330) feet from the un-drilled acreage, the Lessee shall spud an offset well on said un-drilled acreage or on a unit containing said acreage within twelve (12) months from the date the drainage began or release the acreage which is un-drilled or is not a part of a unit which is held by production.

In 2007, Mesquite assigned its rights under the leases to Rosetta. The following year, Rosetta, along with Newfield Exploration Co. and Dynamic Production, Inc. (collectively Newfield), established a pooled unit (the Martin Unit) which included some of the Martin Leases as well as portions of several dozen other unrelated leases. In 2008, Newfield drilled a 17,000-foot well in an area of the Martin Unit which is also covered by the original Martin Leases (the GU-1 Well), and that well began producing natural gas.

2

In 2009, Newfield established an unrelated pooled unit nearby (the Simmons Unit), and it drilled a well on that unit (the Simmons-1 Well). The Simmons-1 Well is 1.5 miles away from the GU-1 Well and is not on property adjoining or adjacent to the Martin Unit. The Simmons Unit is separated from the Martin Leases by two twenty-acre tracts: one to the north of the Simmons Unit (Tract 3584) and another one to its east (Tract 3842).

The Martins filed the underlying suit in 2014 against Rosetta and Newfield, claiming in part that the defendants breached their contractual duties under Addendum 18 of the leases to protect the Martin Leases from drainage by the Simmons-1 Well.

Newfield filed a motion for no-evidence and traditional summary judgment in February of 2015, contending partly that the Martins' contract claim fails because the Simmons-1 Well was not drilled on the Martin Leases or on land adjoining the Martin Leases. The trial court granted that motion, and we affirmed the ruling. *Martin v. Newfield Expl. Co.*, No. 13-17-00104-CV, 2018 WL 1633574, at *3–4 (Tex. App.—Corpus Christi–Edinburg Apr. 5, 2018, pet. denied) (mem. op.).[1] Assuming but not deciding that Newfield had a duty under the leases to prevent drainage and to spud an offset well in certain circumstances, we concluded that such duty was not triggered by drilling on the Simmons Unit because the Simmons Unit does not "adjoin" the Martin Leases. *Id.* at *4 ("[T]he Simmons Unit is not 'acreage adjoining' the Martin Leases because Tract 3584 separates the two pieces of acreage."). We further held that the Martins failed to preserve: (1) their argument that "the duty to protect the non-unitized Martin Leases acres from drainage was triggered when the [GU-1 Well] was drilled in 2008" and (2) their argument that Addendum 18 is ambiguous. *Id.* (noting that neither argument was made in the Martins'

---

[1] We take judicial notice of the records filed in the earlier appeal. *See* TEX. R. EVID. 201; *Estate of York*, 934 S.W.2d 848, 851 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied).

response to Newfield's summary judgment motion; instead, the Martins "focused their arguments on whether Newfield's duty to protect against drainage was triggered when Newfield began drilling the Simmons Unit, not the Martin Unit").

Rosetta moved for summary judgment on March 24, 2017. As to the Martins' contract claim, Rosetta made the same argument as Newfield—i.e., that the duty prescribed in Addendum 18 was not triggered by the drilling of the Simmons-1 Well because that well was not located on the Martin Leases, on a unit including the leases, or on land adjoining the leases.

At a status hearing on April 8, 2019, the Martins' counsel asserted that Rosetta's contractual obligation to protect the undrilled portions of the Martin Leases from drainage was triggered *not* by the drilling on the Simmons Unit, but rather, by the drilling of the GU-1 Well. The trial court requested additional briefing on that issue.

On May 8, 2019, the Martins filed a second amended petition reiterating the claim counsel made at the status hearing—i.e., that Rosetta's duty under Addendum 18 of the leases was triggered by the drilling of the GU-1 Well, not the drilling of the Simmons-1 Well. The second amended petition continued to allege that the drilling of the Simmons-1 Well was the activity which caused the drainage on the Martin Leases. The Martins also filed a motion for partial summary judgment making the same argument. The Martins' motion for partial summary judgment also argued, "in the alternative," that Addendum 18 is ambiguous and that there are fact issues regarding whether the duties set forth therein were triggered.

Without holding any further hearings, the trial court signed a judgment on June 10, 2019, granting Rosetta's motion for summary judgment and dismissing all of the Martins' claims with prejudice. This appeal followed.

4

## II. Discussion

### A. Standard of Review and Applicable Law

We review summary judgments de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other,[2] we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have rendered. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

A movant for traditional summary judgment has the burden to establish that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Similarly, we may not affirm summary judgment on grounds not raised in the summary judgment motion. *Henkel v. Norman*, 441 S.W.3d 249, 251 n.1 (Tex. 2014) (per curiam) (citing *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993)).

If a mineral lease is unambiguous, then we construe it as a matter of law, seeking to enforce the intention of the parties as expressed therein. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005) (per curiam). We examine and consider the entire

---

[2] Much of the Martins' motion for partial summary judgment is devoted not toward affirmatively establishing their own entitlement to judgment as a matter of law, but rather toward refuting the arguments made by Rosetta in its previous summary judgment motion. In any event, the trial court implicitly denied the Martins' motion for partial summary judgment by dismissing all of their claims. We will consider all of the summary judgment pleadings filed by both parties to determine the proper disposition.

writing in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

## B. Analysis

Addendum 18 suffers from both a lack of accuracy and a lack of clarity. Its most glaring defect is its apparent misidentification of which party owes the conditional "duty to protect" undrilled acreage from drainage. Rosetta concedes that the purpose of Addendum 18 is to ensure that the Martins do not bear the risk of drainage to their property caused by nearby drilling activity. But the actual language of the addendum unequivocally imposes the conditional duty to protect on the "Lessor, or its agent(s)"— and the Martins are the lessors. This unambiguous language is repeated in each of the Martin Leases. Rosetta concedes that this is a "scrivener's error" and that Addendum 18 "should have" instead imposed a conditional duty on the "Lessee" to protect the undrilled lease acreage.[3]

Neither party cites any authority establishing that contractual language may be interpreted to mean the diametric opposite of what it actually says merely because the parties mutually intended that result. *See Burlington Res.*, 573 S.W.3d at 203 (noting that our duty in construing a mineral lease is to "ascertain the true intentions of the parties *as expressed in the writing itself*" (emphasis added)). That said, Rosetta never argued in its summary judgment pleadings that Addendum 18 is unenforceable or that the Martins' claims fail for this reason. Accordingly, we may not affirm the summary judgment on

---

[3] Elsewhere in its brief, Rosetta contends that "the Lease language is part of a standard, industry-wide form contract used for decades." Indeed, the Martin Leases appear to be based on a form oil and gas lease known in the industry for a century as "Producers 88." *See, e.g.*, *Elliott v. Davis*, 553 S.W.2d 223, 224 (Tex. App.—Amarillo 1977, writ ref'd n.r.e.); *Maynard v. Gilliam*, 225 S.W. 818, 820 (Tex. App.—Fort Worth 1920, no writ). But the addenda to the leases, including Addendum 18, are not part of that form. The parties cite no cases, and we find none, interpreting or applying any of the specific language at issue here.

grounds that the leases do not impose any duty to protect from drainage on Rosetta in any circumstances. *See Henkel*, 441 S.W.3d at 251 n.1.

A second fault in the language of Addendum 18 is found in its description of the lessee's obligation to "spud an offset well"[4] within twelve months of drainage or release undrilled acreage. Rosetta argues that this clause is intended to define "the nature and quality of the drainage necessary for the protective measures to apply." In other words, its obligation to "spud an offset well" is conditional and is triggered only when two events occur: (1) a well is drilled on or in a unit containing the lease or on adjoining lands; and (2) "drainage is occurring" on the undrilled acreage as determined by "the opinions of reasonable and prudent operations." If this was in fact the parties' intent, then the language used in Addendum 18 appears to be out of order or incomplete. In particular, as written, the addendum does not limit the duty to spud an offset well to situations where "drainage is occurring" because there is no conditional language—such as "if" or "in the event"—directly pertaining to that clause.[5]

Notwithstanding the Addendum's grammatical and logical errors, the parties appear to agree that it imposes duties on Rosetta, when certain specified circumstances are present, to both (1) protect the undrilled Martin acreage from drainage, and (2) spud an offset well or release the undrilled acreage. We will address each obligation in turn.

---

[4] An offset well is "[a]n existing wellbore close to a proposed well that provides information for planning the proposed well." SCHLUMBERGER OILFIELD GLOSSARY, https://www.glossary.oilfield.slb.com/en/Terms/o/offset_well.aspx (last visited Sept. 28, 2020). "Spud" means "[t]o start the well drilling process by removing rock, dirt and other sedimentary material with the drill bit." *Id.*, https://www.glossary.oilfield.slb.com/Terms/s/spud.aspx (last visited Sept. 28, 2020).

[5] As discussed further herein, the contractual obligation to "protect" the undrilled acreage from drainage is clearly made conditional on a well having been drilled "on or in a unit containing part of this acreage" or "on acreage adjoining this Lease." But the obligation to spud an offset well is set forth independently from the obligation to protect from drainage, and the two duties are separated by the "opinions of reasonable and prudent operations" clause, which does not itself contain conditional language.

7

First, the duty to protect undrilled lease lands from drainage is triggered only "in the event a well is drilled on or in a unit containing part of this acreage or is drilled on acreage adjoining this Lease . . . ." In the 2018 appeal, we held that the drilling of the Simmons-1 Well did not satisfy this condition because the Simmons Unit does not adjoin the Martin Leases. *Martin*, 2018 WL 1633574, at *3–4. Rosetta argues that we are therefore bound under res judicata principles to reject the Martins' arguments in this case. *See Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006) ("The doctrine of res judicata, or claim preclusion, bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims which, through the exercise of diligence, could have been litigated in a prior suit."). That is true to the extent the Martins argue, as they did in their original petition, that Rosetta's duty to protect was triggered by the drilling of the Simmons-1 Well. However, as noted, the Martins filed a second amended petition in 2019 arguing instead that the duty to protect was triggered by the drilling of the GU-1 Well, not the Simmons-1 Well.[6] It is undisputed that the GU-1 Well (unlike the Simmons-1 Well) is located "on or in a unit containing part of" the Martin Leases. Therefore, under the plain language of Addendum 18, the drilling of the GU-1

---

[6] Rosetta moved to strike the Martins' second amended petition, arguing it was untimely filed and that the Martins did not obtain leave to amend. *See* TEX. R. CIV. P. 63 (providing that "any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter . . . shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party"). However, the April 8, 2019 hearing was a status hearing, not a final hearing on Rosetta's summary judgment motion, and the record does not show that Rosetta's summary judgment motion was ever set for hearing. *See Cotten v. Briley*, 517 S.W.3d 177, 185 (Tex. App.—Texarkana 2017, no pet.) ("A summary judgment hearing is a trial under Rule 63." (citing *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988))). Moreover, the record does not contain a ruling on the motion to strike; Rosetta does not argue on appeal that the second amended petition should have been struck; and Rosetta has not shown that the filing of the second amended petition caused surprise. Therefore, we presume that the second amended petition was properly filed. *See Goswami*, 751 S.W.2d at 490 ("Since the record is silent of any basis to conclude that the amended petition was not considered by the trial court, and inasmuch as [appellee] has not shown surprise or prejudice, leave of court is presumed.").

Well triggered Rosetta's obligation to "protect [the Martins'] undrilled acreage from drainage."

Rosetta emphasizes that the GU-1 Well is not alleged to have caused any drainage on the Martins' undrilled property. But that is immaterial. Addendum 18 does not state, implicitly or explicitly, that the duties prescribed therein are triggered *only* by the drilling of wells which cause drainage. Nor does it state or imply that the duty to protect from drainage is limited only to drainage caused by the well which triggered the duty. Instead, Addendum 18 places upon the lessee a general duty to protect the undrilled land against all drainage whenever a well is drilled on that land or any adjoining property, without regard to which drilling activity was causing the drainage.

Rosetta argues on appeal that the drilling of the GU-1 Well "cannot create an absolute obligation to protect against drainage caused by any subsequently drilled well." It argues that "[s]uch an interpretation is illogical, especially given that drainage did not allegedly occur until the Simmons Well was drilled much later, on non-adjacent land." We do not find such terms illogical or unreasonable. Rosetta offers no reason for why the original lessee could not have agreed to protect the undrilled acreage from drainage whenever a nearby well is drilled, even if that particular well was not causing drainage at the time.

In response to the Martins' motion for partial summary judgment, Rosetta contended that the new argument raised in the Martins' amended petition—i.e., that the duty to protect from drainage was triggered by the drilling of the GU-1 Well—is barred by claim preclusion. On appeal, Rosetta contends that the Martins' ambiguity arguments are barred by claim preclusion. With respect to both claim preclusion issues, Rosetta contends that the Martins could have, but did not, raise these arguments in the earlier

9

summary judgment proceedings involving Newfield. *See id.*

We disagree that these arguments are barred by claim preclusion. As the Martins note on appeal, Rosetta is the only entity that owns a leasehold interest in the undrilled portions of the Martin Leases—the drainage of which Addendum 18 is designed to protect against. Newfield does not own such an interest and so its obligations under the leases are entirely different from Rosetta's.[7] Even if Rosetta and Newfield had identical leasehold interests, Rosetta did not join in Newfield's summary judgment motion and the earlier summary judgment proceedings did not concern Rosetta. We will not hold that the Martins are precluded from raising certain arguments against Rosetta merely because they failed to raise them earlier in the same proceeding against a differently-situated defendant.

We next address the addendum's provision that Rosetta "shall spud an offset well" or release undrilled acreage in certain circumstances. The parties appear to view this obligation as being triggered by the same events giving rise to the more general duty to protect from drainage—i.e., it is triggered by the drilling of a well on or in a unit containing the lease or on adjoining land. We have already held that the drilling of GU-1 Well satisfies this condition. We observe that, under the parties' construction, another condition arguably applies to this obligation—specifically, it is triggered only when "in the opinions of reasonable and prudent operations, drainage is occurring on the un-drilled acreage, even though the draining well is located over three hundred-thirty (330) feet from the undrilled acreage." There is no dispute that "drainage [was] occurring" on the undrilled

---

[7] As noted, we assumed but did not decide in the 2018 appeal that Newfield had a duty under Addendum 18 to protect the Martins' unleased acreage from drainage in the specified circumstances. *See Martin v. Newfield Expl. Co.*, No. 13-17-00104-CV, 2018 WL 1633574, at *3–4 (Tex. App.—Corpus Christi–Edinburg Apr. 5, 2018, pet. denied) (mem. op.). We merely held that that this duty was not triggered by the drilling on the Simmons Unit. *See id.* The issue of whether the duty was triggered by the drilling of the GU-1 Well was not litigated.

portions of the Martin Leases. Therefore, under the plain language of the lease, Rosetta was obligated to either (1) spud an offset well within twelve months of drainage or (2) release the undrilled acreage. Again, the fact that the drainage to the Martin Leases was caused by the Simmons-1 Well rather than the GU-1 Well does not alter the obligations of the lessee as provided in Addendum 18.

Considering the allegations made in the Martins' second amended petition, we conclude that Rosetta's obligations to protect the undrilled Martin acreage from drainage and to spud an offset well or release the acreage were triggered. Accordingly, the trial court erred in granting Rosetta's summary judgment motion. We sustain the Martins' issues on appeal.

### III. CONCLUSION

The trial court's judgment is reversed. We remand with instructions to grant the Martins' motion for partial summary judgment and for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed the
1st day of October, 2020.

11